Eugene FRYE, et al., Plaintiffs,

v.

POLICE DEPARTMENT OF KANSAS CITY, Missouri, et al., Defendants.

No. 02–0253–CV–W–ODS.

United States District Court, W.D. Missouri, Western Division.

April 17, 2003.

Francis J. Manion, Geoffrey R. Surtees, Amer. Center for Law & Justice, New Hope, KY, Todd Neilson, Olsen & Talpers, Kansas City, MO, for plaintiff.

Dale H. Close, Kansas City, MO, James F. Ralls, Jr., Liberty, MO, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS CAPTAIN REX TARWATER, OFFICER CHRISTINA LUDWIG AND OFFICER TOMMY WOODS ON COUNTS I, II, III AND X AND DISMISSING COUNTS IV THROUGH IX WITHOUT PREJUDICE

SMITH, District Judge.

Pending are motions for summary judgment filed by Captain Rex Tarwater and Officers Christina Ludwig[1] and Tommy Woods. Having considered the parties' arguments, the Court grants these motions.

### I. BACKGROUND

On Saturday, June 23, 2001, Plaintiffs and others assembled at the intersection of Vivion Road and North Antioch in Kansas City, Missouri to protest against, and provide information to the public about, abortion. The Court takes judicial notice of the fact that this is an intersection of two major roads in the north part of the city. A grocery store is on the southeast corner, and shopping centers are found on (or near) the northwest and southwest corners. There is a small "strip mall" on the northeast corner. Continued travel on any of the roads from the intersection leads to additional commercial locations.

The group held signs, some of which were small enough to be held in one hand and others of which measured as large as three feet by five feet. The larger signs were rather heavy, and were placed on the ground with one or more people supporting them so they could be seen by oncoming traffic. Most members of the group positioned themselves between the sidewalk and the curb, a distance of no more than two to three feet from the road. The larger signs were placed in this area as well.

Officers Ludwig and Woods were dispatched to the scene at approximately 11:19 a.m. to respond to complaints from members of the public. Complaining members of the public indicated they were shocked and startled by the size and graphic nature of some of the group's signs, and this affected their driving by, for example, causing them to brake suddenly. The officers told Plaintiffs they had the right to demonstrate, but they would be held responsible if they caused an auto accident. The group was told it could continue demonstrating as long as it did not create a traffic hazard.

Officers Ludwig and Woods left after five to ten minutes, but were directed to return shortly thereafter. Captain Tarwater and Sergeant William Wranich also arrived at the scene. Sergeant Wranich observed that traffic (which was quite heavy, this being a Saturday morning at an intersection in a business district) was being affected; cars were slowing down, hitting their brakes, pulling to the side, and so forth. "[D]rivers who were looking at the signs were nearly running into the back of other vehicles." Wranich Depo. at

---

1. Officer Ludwig married since the events giving rise to this case. In the interest of clarity, she will be referred to by her maiden name.

13. According to Officer Ludwig's report, Captain Tarwater told the group that the "poster size photos were offending people passing through the intersection creating a hazard to public safety" and asked the group to move further away from the road or to cease displaying the distracting signs. Five individuals—Eugene Frye, Lowell Hale, Anthony Leake, Gary Rickman and Richard Schilling—refused and were arrested for violating City Ordinance section 50–161. These individuals were issued citations charging that they "[d]id unlawfully loiter, stand or remain idle in concert with others in a public place as to obstruct a public street by hindering or impeding the free and uninterrupted passage of traffic, by displaying graphic matter causing a traffic hazard by causing drivers to become emotionally distraught and causing them to swerve and slam on their brakes."

Except for Leake, the arrested individuals assert claims for various torts in Counts IV through IX.[2] All Plaintiffs (a group consisting of protesters who were and were not arrested) assert violations of their First and Fourteenth Amendment rights in Counts I through III. All Plaintiffs also assert a claim for failure to supervise or control in Count X, which the parties have indicated is a Constitution-based claim.

## II. DISCUSSION

### A. The Constitutional Claims

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir.1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir.1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588–89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir.1984), cert. denied, 470 U.S. 1057, 105 S.Ct. 1767, 84 L.Ed.2d 828 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Captain Tarwater and Officers Ludwig and Woods argue they are entitled to summary judgment because they enjoy qualified immunity. "[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996). In Habiger, Retired Justice Byron White—sitting by designation with the Eighth Circuit—discussed qualified immunity under a very similar set of facts. To

---

**2.** The City eventually dismissed the charges, so there are no abstention or res judicata issues to be considered.

borrow his analysis, Plaintiffs "had a clearly established right under the Fourth Amendment not to be arrested unless there was probable cause [and had] a clearly established right to express [their] views about abortion in a public forum; but this right is not absolute since it is subject to proper time, place and manner regulations ...." *Id.* Plaintiffs are correct when they contend they were engaged in First Amendment activity. There is also no doubt that a City can impose time, place and manner regulations on First Amendment activity in order to secure the unfettered and safe flow of automobile traffic; that being said, there is no need for the Court to determine whether or not the officers actually had probable cause to believe Plaintiffs should be (or could be) arrested. Instead, the issue is "arguable probable cause," or, stated another way, "whether the officer should have known that the arrest violated [a] clearly established right." *Id.* Police officers are afforded leeway to make judgments about matters within their expertise based on the circumstances, "and an officer on duty in the field is entitled to make a reasonable interpretation of the law he is obligated to enforce." *Id.* at 296.

▮ The First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others. The City Ordinance in question addresses this point, declaring that a person may not "loiter, loaf, wander, stand or remain idle" in a manner that will "[o]bstruct any public street, public highway or public sidewalk or any other public place or building by hindering or impeding the free and uninterrupted passage of vehicles, traffic or pedestrians." Plaintiffs' insistence that

they were not in the roadway and that their signs were not blocking the vision of motorists is irrelevant, because (1) the ordinance is not limited to physical presence in the street or literal obscuring of vision, and (2) the First Amendment does not entitle citizens to create safety hazards. The officers' observations about the effect on traffic, the proximity of Plaintiffs' signs to the road and the reports from citizens—all of which stand uncontroverted—justified the officers' conclusion that Plaintiffs posed a safety hazard and, by their conduct, were impeding the free and safe flow of traffic. The interpretation of the ordinance as prohibiting this conduct was reasonable.[3]

Plaintiffs portray this as an example of censorship, contending that the officers could not interfere just because Plaintiffs' speech was unpopular or offensive, or because the pictures were graphic in nature. This is true: Plaintiffs could not be arrested or disturbed for displaying offensive or graphic pictures. However, they weren't—those arrested were interfering with the safe and free flow of traffic. Their display of large, graphic signs—regardless of what they portrayed—caused drivers to brake and swerve, creating a dangerous situation for *all* drivers and passengers on the roadway.[4] This is not a case in which Plaintiffs' First Amendment activities were curtailed because of the reaction engendered by their message (as was the case in *Lewis v. Wilson,* 253 F.3d 1077 (8th Cir. 2001), *cert. denied,* 535 U.S. 986, 122 S.Ct. 1536, 152 L.Ed.2d 464 (2002)), but rather a case in which Plaintiffs' First Amendment activities were curtailed because of the deleterious effects of the manner in which they chose to express their message.

---

**3.** Plaintiffs' intimation that there were no accidents is also irrelevant; the police were entitled to decide that the situation presented a danger to drivers without waiting for an accident to occur. *Cf. Association of Community Organizations for Reform Now v. Saint*

*Louis County,* 930 F.2d 591, 596 (8th Cir. 1991).

**4.** Plaintiffs' suggestion that the drivers be arrested is surely facetious.

It is also important to remember that Plaintiffs were not told they could not assemble, or that they could not display any of the pictures they wanted—they were told they could not display *certain* pictures *at that particular place.* In allowing Plaintiffs the option of moving to a location further from the road, the officers restricted the *place* of Plaintiffs' message. Alternatively, Plaintiffs could have remained in that place if they changed the *manner* in which they protested (by removing the signs that were distracting drivers). As Justice White noted in *Habiger,* the right to protest can be limited by reasonable time, place or manner restrictions, and the options offered by the officers were legitimate.

It is for this reason that Plaintiffs' continued emphasis on the popularity/unpopularity of their message is misguided. Unpopular and disturbing speech is protected by the First Amendment. It is also true that some of the citizen complaints referred to Plaintiffs' "graphic" or "gruesome" pictures, thereby suggesting disapproval of Plaintiffs' message. However, Plaintiffs were *never* told they could not display the pictures—just that they could not display them next to the busy intersection because in doing so they were distracting drivers and creating a safety hazard. "The right to free speech, of course, includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience. But the protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that the unwilling audience cannot avoid it. Indeed, it may not be the content of the speech, as much as the deliberate 'verbal or visual assault,' that justifies proscription." *Hill v. Colorado,* 530 U.S. 703, 716, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (internal quotations and citations omitted).

Consequently, Captain Tarwater and Officers Ludwig and Woods are qualifiedly immune from suit and are entitled to summary judgment on Counts I, II, III and X.

### B. Tort Claims

■ The Court is also invited to consider whether summary judgment should be entered against Plaintiffs on the tort claims. The Court declines the invitation, concluding it is preferable to dismiss these claims without prejudice for lack of jurisdiction.

The tort claims are premised on state law, and after the October 7, 2002 dismissal of Carl Lackey, all parties are citizens of Missouri. Under 28 U.S.C. § 1367(a), the Court had supplemental jurisdiction over the tort claims because they were "so related to claims in the action within" the Court's original jurisdiction that they formed part of the same case or controversy. However, now that the constitutional claims have been disposed of, the Court need not (and arguably should not) retain supplemental jurisdiction over the tort claims. 28 U.S.C. § 1367(c)(3); *Birchem v. Knights of Columbus,* 116 F.3d 310, 314 (8th Cir.1997). The Court declines to retain jurisdiction over the tort claims, preferring instead to allow Plaintiffs to litigate the issues regarding Defendants' state law immunities in state court.

### III. CONCLUSION

Summary Judgment is entered in favor of Defendants Captain Rex Tarwater, Officer Christina Ludwig and Officer Tommy Woods on Counts I, II, III and X. Counts IV through IX are dismissed without prejudice.

IT IS SO ORDERED.