McMILLIAN, Circuit Judge.
Appellants Eugene Frye, Lowell Hale, Gary Rickman, Richard Schilling, Elizabeth Schilling, Deborah Schilling, Darla Hale, and Kathryn Coons appeal from a judgment entered in the District Court[1] for the Western District of Missouri grant *788 ing motions for summary judgment filed by Kansas City, Missouri, police officers. Frye v. Police Dep’t, 260 F.Supp.2d 796 (W.D.Mo.2003) (Frye). Appellants argue that the district court erred in holding that the officers were entitled to qualified immunity. We affirm.
BACKGROUND
On Saturday, June 23, 2001, at approximately 11:00 a.m., appellants and several other individuals assembled at the intersection of two heavily trafficked roads in Kansas City, Missouri, to protest and provide information about abortion. There was á grocery store on one corner, shopping centers on or near two corners, and a strip mall on the fourth corner. The demonstrators placed themselves between the sidewalk and the curb, a distance of about two or three feet from the street. Some of the demonstrators held small signs. Others placed large, poster-sized signs of approximately three-by-five-feet on the ground. Some of the larger signs displayed color photographs of aborted fetuses. For example, appellant Lowell Hale placed a large sign displaying a photograph of the head of a decapitated fetus- on one side and a photograph of the parts of a dismembered fetus on the other side “right along the curb.”
In response to complaints about “offensive signs,” police officers Christina Ludwig and Tommy Woods were dispatched to the intersection. After telling the demonstrators that they could continue to demonstrate as long as they did not create a traffic hazard, the officers left the scene. A few minutes later, the officers returned to speak to a group of motorists who had stopped to complain about the photographs of mutilated fetuses along the side'of the road. Captain Rex Tarwater and Sergeant William Wranich also were dispatched to the scene. Wranich observed that traffic was heavy and was being affected by the demonstration. In his deposition, Wranich stated: “Drivers who were looking at the signs were nearly running into the backs of other vehicles.” One of the motorists told the officers that she was so shocked by the photographs that she slammed on .her brakes and had to pull over into a parking lot in order to recover. Two motorists complained that they had young children in their vehicles and were upset that the children could easily see the photographs. All of the motorists complained that viewing the graphic photographs had impaired their ability to “safely and properly control their vehicles.”
Tarwater told the demonstrators that the “poster-size photos were offending people passing through the intersection [and thus] creating a hazard to public safety.” He then asked the demonstrators to move further away from the road with the large photographs of the mutilated fetuses. They refused, and Tarwater gave them the option of staying at the same location as long as they did not display the large photographs that were creating a traffic hazard. They again refused. Tarwater, who had sought advice from the city’s attorney, told them if they refused to either relocate or stop displaying the large photographs of mutilated fetuses at the side of the road, they would be arrested. They again refused and five appellants were arrested for violating the city’s loitering ordinance, which, in relevant part, makes it “unlawful for any person to ... stand ... either alone or in concert with others in a public place in such a manner so as to [o]bstruct any public street, public highway ... by hindering or impeding the free and uninterrupted passage of vehicles, traffic, or pedestrians.” Kansas City, Mo., Ordinances, § 50 — 161(a).
In March 2002, eleven of the demonstrators .filed the present civil rights action in federal district court, alleging that the po *789 lice officers had violated their federal constitutional rights of free speech and assembly, equal protection, and freedom from false arrest. They also alleged state law tort claims. The police officers filed motions for summary judgment on qualified immunity grounds.
The district court granted the police officers’ motions. The district court held that the police officers had reasonably interpreted the ordinance as prohibiting conduct that distracted motorists and thereby obstructed a public street by impeding the safe flow of traffic. Noting that the First Amendment does not entitle citizens to create safety hazards, the district court held that the police officers had imposed reasonable restrictions not because of the content of appellants’ anti-abortion message, but “because of the deleterious effects of the manner in which they chose to express their message.” Frye, 260 F.Supp.2d. at 799. The district court emphasized that the officers had not forbidden the demonstrators to display any of the large photographs of mutilated fetuses, but only restricted the place where they could be shown in order to avoid a traffic hazard. Id. at 800. The district court declined to exercise supplemental jurisdiction over the state law tort claims and dismissed those claims without prejudice. This appeal followed.
DISCUSSION
We review the district court’s grant of grant of summary judgment de novo. Summary judgment is appropriate, if, after viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In a qualified immunity appeal, our first inquiry is whether “[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right?” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If so, the next inquiry “is to ask whether the right was clearly established.” Id. “This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.” Id. In determining whether a right is clearly. established, we ask “whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Id. It is also important to note that “an officer on duty in the field is entitled to make a reasonable interpretation of the law he is obligated to enforce.” (Habiger v. City of Fargo, 80 F.3d 289, 296 (8th Cir.) (Habiger), cert. denied, 519 U.S. 1011, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996)). We apply these principles because “the purpose of the qualified immunity doctrine is to provide ample room for mistaken judgments and to protect ‘all but the plainly incompetent or those who knowingly violate the law.’” Id. at 297 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).
As to the first inquiry, there is no dispute that appellants had a First Amendment right to express their views about abortion in a public forum. As to the second inquiry, appellants argue that the district court misapplied First Amendment law to the facts of the case, as taken in the light most favorable to them as the non-moving parties. They concede that officers:
may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions “are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that *790 they leave open ample alternative channels for communication of the information.”
Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (Ward) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).
However, appellants argue that, here, the police officers’ restrictions were content-based, not content-neutral. In particular, appellants argue that the district court ratified the police officers’ improper use of a “heckler’s veto,” reasoning that the police officers imposed the restrictions based on the motorists’ adverse reactions to the large photographs of mutilated fetuses by the side of the road. It is true that “[t]he right to free speech, of course, includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker’s message may be offensive to his audience.” Hill v. Colorado, 530 U.S. 703, 716, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (Hill). However, “ ‘[i]t may not be the content of the speech, as much as the deliberate verbal or visual assault that justifies proscription.’ ” Id. (quoting Erznoznik v. Jacksonville, 422 U.S. 205, 210-11 n. 6, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)).
Thus, we must determine whether the police officers’ conduct in placing restrictions on the display of the large signs displaying photographs of mutilated fetuses was based on the content of appellants’ anti-abortion message, or on a content-neutral factor. “ ‘The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.’ ” Id. at 719, 120 S.Ct. 2480 (quoting Ward, 491 U.S. at 791, 109 S.Ct. 2746). In other words, “[t]he government’s purpose is the controlling consideration.” Ward, 491 U.S. at 791, 109 S.Ct. 2746. In addition, “[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages, but not others.” Id.
In this case, taking the facts in the light most favorable to appellants, we agree with the district court that the police officers did not impose restrictions based on the content of appellants’ message. As the district court noted, the police officers did not forbid appellants from expressing their anti-abortion message. Indeed, the police officers did not forbid appellants from expressing their message by the use of the large photographs displaying mutilated fetuses. Rather, the police officers placed reasonable restrictions on the location of the signs in order to protect public safety. The officers gave the demonstrators the option of staying by the side of the road if they did not display the large, graphic photographs that had distracted motorists or the option of displaying the photographs at a location further from the road. Thus, the police officers narrowly tailored the restrictions to serve a significant governmental interest and left open alternative channels of communicating their message.
Although appellants argue that they had a right to display the large, graphic photographs at the side of the road, the Supreme Court “has regularly rejected the assertion that people who wish to ‘propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.’ ” United States v. Grace, 461 U.S. 171, 177-78, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (quoting Adderley v. Florida, 385 U.S. 39, 47-48, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966)). In this case, the police officers’ conduct did “not *791 provide for a ‘heckler’s veto’ but rather allow[ed] every speaker to engage freely in any expressive activity communicating. all messages and viewpoints subject only to” reasonable place and manner restrictions. Hill, 530 U.S. at 734, 120 S.Ct. 2480.
Nor, contrary to appellants’ argument, did the district court impermissibly look to their “signs to determine which signs could be removed by [the] police officers (based on the reaction the signs generated), and which could remain.” Br. for Appellants at 20. In Hill, the Supreme Court rejected a similar argument. In that case, abortion protestors argued that a state statute was necessarily content-based because it was necessary to examine the content of a protestor’s statement to determine whether it violated the statute. The Supreme Court disagreed, explaining that “[i]it is common in the law to examine the content of a communication to determine the speaker’s purpose” and that it had “never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether the rule of law applies to a course of conduct.” Hill, 530 U.S. at 721, 120 S.Ct. 2480; see also Veneklase v. City of Fargo, 248 F.3d 738, 745 (8th Cir.) (“We reject the argument that because an inquiry might be necessary to determine whether a person is picketing, the ordinance therefore is content-based.”), cert. denied, 534 U.S. 815, 122 S.Ct. 42, 151 L.Ed.2d 15 (2001).
As to the sufficiency of the governmental interest, appellants do not dispute, nor could they, that “[i]t is a traditional exercise of, the State’s ‘police powers to protect the health and safety of their citizens.’ ” Hill, 530 U.S. at 715, 120 S.Ct. 2480 (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). They also concede that “the protection afforded to offensive messages does not always embrace offensive speech that is so intrusive that an unwilling audience cannot avoid it.” Id. at 716, 120 S.Ct. 2480. However, they argue that “the fact that [their] allegedly offensive speech may have affected the driving skills of motorists is simply irrelevant,” relying on Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (Cohen). Br. for Appellants at 25.
Appellants’ reliance on Cohen is misplaced. In that case, the Supreme Court tolerated a protestor’s right to wear a jacket expressing his views in vulgar language in the corridors of a courthouse because viewers could “effectively avoid further bombardment of their sensibilities simply by averting their eyes.” 403 U.S. at 21, 91 S.Ct. 1780. However, “[t]he recognizable privacy interest in avoiding unwanted communication varies widely in different settings.” Hill, 530 U.S. at 716, 120 S.Ct. 2480. It is undisputed that the antiabortion demonstration took place at a heavily traveled intersection during a busy part of the day. The police officers observed that the presence of the large signs depicting photographs of mutilated fetuses near the road side was creating a traffic hazard. The motorists all complained that viewing the photographs impaired their ability to safely drive their vehicles. The fact that an accident had not occurred is irrelevant. The police officers were entitled to decide that the situation presented a danger before an accident occurred. See ACORN v. St. Louis Cqunty, 930 F.2d 591, 596 (8th Cir.1991) (“The government need not wait for accidents to justify safety regulations.”).[2]
*792 In a case similar to the instant case, the Ninth Circuit rejected abortion protestors’ argument that they had the right “not only to advocate their cause but also to select what they believe to be the most effective means for doing so.” Foti v. City of Menlo Park, 146 F.3d 629, 641 (9th Cir.1998) (internal quotation omitted). In that case, as in this case, the protestors wanted to display three-by-five-foot posters of aborted fetuses, but a city ordinance regulated the size and number of picket signs. The Ninth Circuit noted that although the First Amendment protected their right to advocate their cause, the First Amendment did not give them a “right to dictate the manner in which they convey their message within their chosen avenue.” Id. The court held that the restriction on the manner of the protest “was permissible in light of the City’s substantial interest in requiring drivers to devote greater attention to driving conditions and the road signs.” Id. at 642. The same can be said here, and thus the district court did not err in granting summary judgment on appellants’ First Amendment claims.
Regarding appellants’ false arrest claim, “the issue for [qualified] immunity purposes is not probable cause in fact but arguable probable cause.” Habiger, 80 F.3d at 295 (internal quotation omitted). The district court did not err in holding that the police officers reasonably interpreted the ordinance as prohibiting conduct which distracted drivers and thereby obstructed a public street by “hindering the free and uninterrupted flow of traffic.” Kansas City, Mo., Ord., § 50-161(a). As previously noted, “an'officer on duty in the field is entitled to make a reasonable interpretation of the law he is obligated to enforce.” Habiger, 80 F.3d at 296. Also, we note that before appellants were arrested, Tarwater consulted with the city attorney and followed his advice. Although following an attorney’s advice “does not automatically cloak [officers] with qualified immunity,” it can “show the reasonableness of the action taken.’ ” Womack v. City of Bellefontaine Neighbors, 193 F.3d 1028, 1031 (8th Cir.1999) (quoting E-Z Mart Stores, Inc. v. Kirksey, 885 F.2d 476, 478 (8th Cir.1998)). Indeed, the Seventh Circuit recently stated that “[c]onsulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, but it goes far to establish qualified immunity.” Kijonka v. Seitzinger, 363 F.3d 645, 648 (7th Cir.2004) (internal citation omitted). In this case, the police officers acted reasonably and “surely thought they had probable cause to arrest [appellants].” Habiger, 80 F.3d at 297. Thus, the district court did not err in granting their motion for summary judgment as to the false arrest claim. Id.
Accordingly, we affirm the judgment of the district court.

. The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

. Although not directly at issue in this case, we note that several motorists had complained that their minor children had viewed the photographs of mutilated fetuses. In Olmer v. City of Lincoln, 192 F.3d 1176, 1180 (8th Cir.1999) (internal quotation omitted), an *792 abortion protest case, we stated that “a city's interest in protecting very young children from frightening images is constitutionally important; that is, the interest is significant, compelling, and legitimate.”