# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2570

_____

Lora Walker

*Plaintiff - Appellant*

v.

Hartford Life and Accident Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 19, 2016
Filed: August 2, 2016

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Lora Walker, a senior planning analyst for Hennepin County, Minnesota, was insured under a group long-term disability policy the county obtained from Hartford Life and Accident Insurance Company (Hartford).[1]  In April 2009, Walker filed a

_____

[1]Minnesota permits insurers to issue group accident and health insurance policies to cover groups of no fewer than two employees.  See Minn. Stat. § 62A.10,

claim for disability benefits based on her Type I diabetes. Hartford denied the claim. In May 2014, Walker, a Minnesota citizen, sued Hartford, a Connecticut citizen, in Minnesota state court, alleging breach of contract. Hartford timely removed the case to federal court based on diversity jurisdiction and moved for summary judgment. See 28 U.S.C. §§ 1332(a)(1), 1441(a), 1446. Walker moved for partial summary judgment. The district court[2] granted Hartford summary judgment, concluding Walker's suit was untimely under the policy. The district court denied Walker's cross-motion as moot. Walker appeals.[3] We affirm.

## I. BACKGROUND

For years, the county permitted Walker to work from home full-time. In 2008, Walker's new supervisor advised Walker she would have to work at a county office two days a week. Walker, for the first time in January 2008, informed the county she had diabetes and asked that she be allowed to work from home so she could test her blood and take insulin as needed. Walker complained the county office lacked sufficient privacy and a safe, sanitary, and effective place to take insulin.

When the county refused to accommodate Walker and let her work full-time from home, as her doctor recommended, Walker ended her employment. Although she worked part-time through December 2008, Walker's last full day of work was

---

subdiv. 1. Because this case concerns a governmental benefit plan, the requirements of the Employee Retirement Income Security Act of 1974 (ERISA) do not apply, and the Hartford policy is exempt from the requirements of ERISA. See 29 U.S.C. §§ 1002(32), 1003(b)(1).

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Jeffrey J. Keyes, United States Magistrate Judge for the District of Minnesota.

[3]We possess appellate jurisdiction under 28 U.S.C. § 1291.

June 17, 2008. On April 8, 2009, Walker filed a claim for disability benefits under the Hartford policy. Hartford denied the claim initially and on appeal, concluding Walker failed to show she could not perform her essential job duties.[4]

In May 2014, Walker sued Hartford for breach of contract in Minnesota state court. Hartford removed the case to federal court and later moved for summary judgment, arguing Walker's suit (1) was untimely under the policy's limitation period, and (2) even if timely, failed on the merits. Walker cross-moved for partial summary judgment on several grounds. The district court referred the case to a magistrate judge for disposition.

After conducting a hearing, the magistrate judge recommended the district court grant summary judgment to Hartford because Walker's suit was untimely under the policy. The magistrate judge also recommended denying Walker's cross-motion as moot. In a summary order, the district court denied Walker's objections and adopted the report and recommendation in full. Walker appeals, challenging the district court's interpretation of Minnesota law which governs the policy.

---

[4]The policy includes two main definitions of disability. The first applies for the twelve months after the insured suffers significant income loss because the insured is unable to perform "one or more of the Essential Duties of Your Occupation," which is defined in terms of the occupation "as it is recognized in the general workplace," not in terms of "the specific job [the insured is] performing for a specific employer or at a specific location." The second definition applies after that twelve-month period if the insured is unable to perform "one or more of the Essential Duties of Any Occupation" for which she is "qualified by education, training or experience."

## II.	DISCUSSION

### A.	Choice of Law and Standards of Review

The parties agree Minnesota substantive law applies to this diversity case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Supreme Court of Minnesota has not addressed the issues raised in this appeal, so "[w]e must predict how [it] would rule, and we follow decisions of the intermediate state court when they are the best evidence of Minnesota law." Friedberg v. Chubb & Son, Inc., 691 F.3d 948, 951 (8th Cir. 2012). We review de novo the district court's interpretation of Minnesota law and its summary judgment rulings. See Bannister v. Bemis Co., 556 F.3d 882, 884 (8th Cir. 2009). We also review de novo Walker's constitutional claims. See United States v. Meirick, 674 F.3d 802, 804 (8th Cir. 2012). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B.	Plain Meaning

Hartford's group policy required Walker to initiate any legal action against Hartford within "three years after the time written Proof of Loss is required to be furnished according to the terms of the Policy." The policy required Walker to send proof of loss "within 90 days after the start of the period for which [Hartford] owe[d] payment." Based on the policy terms and the undisputed facts in the record, the district court correctly determined Walker "could not take legal action against Hartford after December 15, 2011." Because Walker did not file suit until May 2014, the district court concluded Walker's suit was time-barred.

Walker does not dispute the district court's calculations under the policy or argue that her suit was timely under the policy's limitation period. Rather, Walker argues the policy's limitation period does not apply at all. According to Walker, "[t]he District Court should be reversed because Chapter 62A, when read in its

entirety, is intended to provide the protections of Minn. Stat. §62A.04 to insureds under group policies" like hers and Hartford's proof-of-loss language does not comply.

Walker's arguments turn on issues of statutory interpretation. Under Minnesota law, "[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16. "We interpret a statute 'as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant.'" 328 Barry Ave., LLC v. Nolan Props. Grp., LLC, 871 N.W.2d 745, 749 (Minn. 2015) (quoting Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 496 (Minn. 2009)). "'When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect.'" Allan v. R.D. Offutt Co., 869 N.W.2d 31, 33 (Minn. 2015) (quoting Burkstrand v. Burkstrand, 632 N.W.2d 206, 210 (Minn. 2001)). In such a case, "statutory construction is neither necessary nor permitted and courts apply the statute's plain meaning." Am. Tower, L.P. v. City of Grant, 636 N.W.2d 309, 312 (Minn. 2001).

Walker contends the district court should have determined her suit was timely under the "standard provisions" of § 62A.04, subdiv. 2. That section provides, in relevant part

> **Required provisions.** Except as provided in subdivision 4 each [accident and health insurance] policy delivered or issued for delivery to any person in this state shall contain the provisions specified in this subdivision in the words in which the same appear in this section. The insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary.

With respect to proof of loss, which triggers the limitation period, subsection (7) requires a provision that states, in relevant part,

> Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss *within 90 days after the termination of the period for which the insurer is liable.*

Id. § 62A.04, subdiv. 2(7) (emphasis added).  Subsection (11) then requires a provision stating, "No action at law or in equity shall be brought to recover on this policy . . . after the expiration of three years after the time written proof of loss is required to be furnished."  Id. § 62A.04, subdiv. 2(11).

In Walker's view, "[t]he critical language difference between the policy and the statute is that the policy requires proof of loss 90 days from the <u>start</u> of a disability, while the statute requires proof of loss 90 days from the <u>termination</u> of a disability." Walker concedes her suit is untimely under the policy, but maintains it is timely under what she argues is the controlling statute.

The key question, then, is whether the limitation period in the Hartford group policy must give way to the "standard provisions" of § 62A.04, subdiv. 2.  See id. § 62A.05(b) ("When any provision in a policy subject to sections 62A.01 to 62A.09 hereof, is in conflict with any provision of sections 62A.01 to 62A.09 hereof, the rights, duties and obligations of the insurer, the insured and the beneficiary shall be governed by the provisions of sections 62A.01 to 62A.09 hereof.").  Walker says it must.  She argues various "other provisions of Chapter 62A make it clear that the legislature intended that individual and group policies . . . provide equal protections to insureds."  Specifically, Walker relies on Minn. Stat. §§ 62A.01, subdiv. 2; 62A.05(a); and 62A.10.

-6-

Section 62A.01, subdiv. 2 generally requires certificates of insurance issued to Minnesota residents to "provide coverage for all benefits required to be covered in group policies in Minnesota." Walker says this section "requires parity between individual and group policies." Section 62A.05(a) states, "No policy provision which is not subject to section 62A.04 shall make a policy, or any portion thereof, less favorable in any respect to the insured or the beneficiary than the provisions thereof which are subject to sections 62A.01 to 62A.09 hereof." Walker asserts the proof-of-loss provision in the policy is less favorable than § 62A.04, subdiv. 2(7). Section 62A.10, subdiv. 4 requires group policy forms to "contain the standard provisions relating and applicable to health and accident insurance and [to] conform with the other requirements of law relating to the contents and terms of policies of accident and sickness insurance insofar as they may be applicable to group accident and health insurance." As Walker sees it, these provisions, viewed together, establish "that individual and group policies are both subject to the protections of Minn. Stat. §62A.04."

As the district court recognized, the fatal flaw in Walker's patchwork statutory analysis is that it ignores the plain meaning of § 62A.09.[5] Section 62A.09(3) declares, "Nothing in sections *62A.01*, 62A.02, 62A.03, *62A.04*, *62A.05*, 62A.06, 62A.07, and 62A.08 shall apply to or affect . . . any group policy of insurance, except when specifically referred to." (Emphasis added.). There are no relevant references to group policies in §§ 62A.01, 62A.04, or 62A.05. Thus by its express terms,

_____

[5]As the district court noted, it was not the first federal court in Minnesota to conclude § 62A.04 did not apply to group policies. See Bolin v. Hartford Life & Accident Ins. Co., 28 F. Supp. 3d 915, 918 n.3 (D. Minn. 2014) (finding Minn. Stat. §§ 62A.04 and 62A.05 irrelevant to a group policy in light of Minn. Stat. § 62A.09); Freeman v. UNUM Life Ins. Co., Civ. No. 3-89-79, 1990 WL 640294, at *4 (D. Minn. Mar. 27, 1990) ("Section 62A.04, subd. 2 . . . is not applicable to group insurance policies.").

§ 62A.09(3) unambiguously proclaims those sections do not apply to group policies like the Hartford policy. That leaves only § 62A.10, subdiv. 4, which requires standard provisions in group policies only "insofar as they may" apply. But under the plain meaning of § 62A.09(3), the standard provisions in § 62A.04 do not apply to group policies like Walker's. When "the language of a statute is clear and free from ambiguity, our role is to enforce the language of the statute, and not explore the spirit or purpose of the law." See Premier Bank v. Becker Dev., LLC, 785 N.W.2d 753, 759 (Minn. 2010); accord Allan, 869 N.W.2d at 33.

Undeterred by the unambiguous statutory language in § 62A.09(3), on appeal, Walker suggests we should defer to "guidelines/checklists" published on the Minnesota Department of Commerce's website, which she contends indicate "the standard provisions of Minn. Stat. §62A.04 apply to both individual and group policies." See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (holding that administrative "rulings, interpretations and opinions . . . , while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"). Assuming Walker preserved this argument despite not presenting it below, see Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 725 (8th Cir. 2002) ("Ordinarily, we do not consider an argument raised for the first time on appeal."), we conclude deference is not appropriate here. Under Minnesota law, an "administrative agency may not adopt a rule in conflict with the statute," Dumont v. Comm'r of Taxation, 154 N.W.2d 196, 199 (Minn. 1967), and we only consider "administrative interpretations of the statute" "[w]hen the words of a law are not explicit," Minn. Stat. § 645.16(8). Cf. Mammenga v. State Dep't of Human Servs., 442 N.W.2d 786, 792 (Minn. 1989). Section 62A.09 is explicit and its meaning is clear—§ 62A.04, subdiv. 2's standard provisions do not apply to the Hartford group policy.

We also reject Walker's assertion that we already determined the "mandatory" provisions of § 62A.04, subdiv. 2 apply to group policies in Weyrauch v. Cigna Life Ins. Co. of N.Y., 416 F.3d 717 (8th Cir. 2005). Our opinion in Weyrauch never mentions § 62A.09, much less addresses the issue here—whether § 62A.04, subdiv. 2 sets a mandatory limitation period for a group policy under Minnesota law regardless of the policy terms and despite language in § 62A.09 that expressly says it does not. See Weyrauch, 416 F.3d at 720-21. Contrary to Walker's assertion, Weyrauch is not "controlling" and does not compel us to ignore the plain meaning of § 62A.09.

## C.    Equal Protection

Walker argues "that if Minn. Stat. § 62A.09 (limitations) is interpreted to mean that insureds under group policies are not afforded the same protections as insureds under individual policies, it would violate the equal protection clause of both the Minnesota and U.S. Constitutions." We disagree.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Minnesota Constitution provides "[n]o member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers."[6] Minn. Const. art. I, § 2.

---

[6]"Although the phrase 'equal protection' is not used, [the Minnesota Supreme Court has] recognized that the Minnesota Constitution 'embodies principles of equal protection synonymous to the equal protection clause of the Fourteenth Amendment to the United States Constitution.'" In re Guardianship of Durand, 859 N.W.2d 780, 784 (Minn. 2015) (quoting State v. Russell, 477 N.W.2d 886, 889 n.3 (Minn. 1991)). We therefore analyze both clauses "using the same principles." In re Welfare of Child of R.D.L. & J.W., 853 N.W.2d 127, 131 (Minn. 2014).

"The purpose of the[se] equal protection clause[s] . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918). Equal protection "does not guarantee that all persons must be dealt with in an identical manner," Mills v. City of Grand Forks, 614 F.3d 495, 500 (8th Cir. 2010), and "'does not forbid [all statutory] classifications,'" In re Welfare of M.L.M., 813 N.W.2d 26, 37 (Minn. 2012) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). Rather, "'[i]t simply keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike.'" Id. (quoting Nordlinger, 505 U.S. at 10).

Where, as here, an equal-protection challenge does not involve a protected class or a fundamental constitutional right, "we review the challenge under a rational basis standard under both the state and federal constitutions." Scott v. Minneapolis Police Relief Ass'n, Inc., 615 N.W.2d 66, 74 (Minn. 2000). Under federal rational-basis review, "we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631 (1996); accord Scott, 615 N.W.2d at 74. Walker's constitutional claim fails "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). We afford the challenged classification in § 62A.09(3) "a strong presumption of validity," which Walker, as the one "attacking the rationality of the legislative classification," can only overcome by negating "'every conceivable basis which might support it.'" Id. at 314-15 (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)); accord In re Estate of Turner, 391 N.W.2d 767, 769 (Minn. 1986).

In addition to applying federal rational-basis review, the Minnesota Supreme Court has, at times, also applied a stricter formulation of the rational-basis test under the Minnesota constitution. See, e.g., State v. Garcia, 683 N.W.2d 294, 298-99 (Minn. 2004). Minnesota's alternative rational-basis test has three requirements:

-10-

"(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve."

In re Guardianship of Durand, 859 N.W.2d at 784 (quoting Russell, 477 N.W.2d at 888). "The key distinction between the federal and Minnesota tests is that under the Minnesota test '[the Supreme Court of Minnesota] ha[s] been unwilling to hypothesize a rational basis to justify a classification,'" requiring instead "'a reasonable connection between the actual, and not just the theoretical, effect of the challenged classification and the statutory goals.'" Garcia, 683 N.W.2d at 299 (quoting Russell, 477 N.W.2d at 889).

When evaluating an equal-protection challenge under Minnesota law, "[w]e presume statutes to be constitutional and exercise our power to declare a statute unconstitutional with extreme caution and only when absolutely necessary." Gluba ex rel. Gluba v. Bitzan & Ohren Masonry, 735 N.W.2d 713, 719 (Minn. 2007). We will not declare a statute "unconstitutional unless the party challenging it demonstrates beyond a reasonable doubt that the statute violates some constitutional provision." Wegan v. Village of Lexington, 309 N.W.2d 273, 279 (Minn. 1981).

After careful review of the limited record on this issue, we conclude Walker fails to overcome the presumptions of validity in favor of § 62A.09(3) and fails to establish the district court's prediction of Minnesota law violates the principles of equal protection under either the United States or Minnesota constitutions. Walker's analysis of the federal and Minnesota rational-basis tests is rather thin. Proclaiming

-11-

she "cannot conceive of any public policy that would rationalize a distinction between insureds under group disability policies and insureds under individual disability policies," Walker focuses her limited analysis on Minnesota's three-step rational-basis test. As Walker sees it, the district court's application of the plain meaning of § 62A.09(3) "cannot stand" because "the only difference between the two classes is the source of their benefits" and "[t]he purpose of the statute is unclear," making it "impossible to say whether Minn. Stat. §62A.09 advances any legitimate governmental purpose."

Hartford responds that Walker has failed to show individual policyholders and group policyholders are similarly situated in all relevant respects. In support, Hartford relies in part on Lundberg ex rel. Lundberg v. Jeep Corp., 582 N.W.2d 268, 272 (Minn. Ct. App. 1998), in which the Minnesota Court of Appeals decided "[t]he separate and distinct sources of funds for [a Minnesota] medical assistance program and private health insurance prevent[ed] a determination that individuals who receive [medical assistance] [we]re similarly situated to individuals covered by private health insurance." According to Hartford, Walker ignores significant differences between individual and group policies, including the typical group employer's greater sophistication and expertise in dealing with insurance matters and its "stronger bargaining power to negotiate additional or modified terms."

Building on those differences in applying the Minnesota rational-basis test, Hartford maintains "individual and group policies" have long been "operationally different in terms of marketing, purchase, negotiation, payment and claims filing," which results in a real and substantial distinction rather than an arbitrary and capricious one. As for purpose, Hartford, noting the absence of "a record of [§ 62A.09's] legislative history," contends the purpose of the statute "is apparent from the statute itself" and the way Chapter 62A discusses the differences between individual and group policies and the pertinent standard provisions for each.

-12-

Hartford proposes the legislature reasonably decided the differences in expertise and bargaining power made "it unnecessary to extend all of the mandates for individual policies to group policies," the rationale being that insureds under group policies do not need the same statutory protection as individuals buying insurance themselves and may benefit in other ways from fewer mandatory requirements, particularly for group policies that cross state lines. Hartford suggests the greater flexibility and freedom to negotiate could reduce costs and encourage "employers to make these insurance benefits available to employees, improving the welfare of Minnesota citizens." Finding those purposes unquestionably legitimate, Hartford contends § 62A.09(3) satisfies both the federal and Minnesota rational-basis tests.

In response, Walker summarily asserts individual and group policyholders are similarly situated and baldly opines "[t]here is no rational basis to distinguish between the 2 classes of insureds." Walker faults Hartford for (1) failing "to show a difference between the insureds under group policies and insureds under individual policies"; (2) assuming "all employers are big corporations" that "don't need protections against insurance companies" when § 62A.10, subdiv. 1 clarifies the term "group" includes an employer covering as few as two employees; and (3) failing to provide "any evidence that an employer of 2 has the same bargaining power as" a much larger employer. In Walker's view, "[a] small business owner with 2 employees is in no better bargaining position than an individual." To Walker, that possibility makes the distinction in § 62A.09(3) unconstitutional. Walker's arguments are unpersuasive.

Even if we assume individual and group policyholders are similarly situated for the purposes of equal protection, we agree with Hartford that Walker has not met her heavy burden of proving § 62A.09(3) is unconstitutional. Walker claims the distinction the Minnesota legislature has drawn between individual and group

-13-

policies is irrational because the two groups of policyholders under such policies are largely the same. But "[t]he grounds for treating differently persons similarly situated may be slight, provided the discrimination is based on a reasonable distinction which is supported by the facts." Fabio v. City of Saint Paul, 126 N.W.2d 259, 262-63 (Minn. 1964). "[M]ost legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." Romer, 517 U.S. at 631. "[O]nly 'invidious discrimination' . . . offends the constitution." In re Estate of Turner, 391 N.W.2d at 769 (quoting Ferguson v. Skrupa, 372 U.S. 726, 732 (1963)). We see no arbitrary classification nor invidious discrimination here.

What's more, the basis for a reasonable distinction need not apply in every circumstance to be valid. See, e.g., Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 487-88 (1955) ("[T]he law need not be in every respect logically consistent with its aims to be constitutional."); Mack v. City of Minneapolis, 333 N.W.2d 744, 751-52 (Minn. 1983). "Rational-basis review . . . does not require a perfect or exact fit between the means used and the ends sought." United States v. Johnson, 495 F.3d 951, 963 (8th Cir. 2007) (citing Bankers Life & Cas. Co. v. Crenshaw, 486 U.S. 71, 85 (1988) ("[A] state statute need not be . . . perfectly calibrated in order to pass muster under the rational-basis test.")); accord Mack, 333 N.W.2d at 751 (explaining "[a] statute is not unconstitutional merely because it does not" apply in every circumstance so long as "the statute bears a reasonable relationship to a legitimate public purpose"). The possibility that the purchaser of a group policy may not always have superior bargaining power to an individual does not render the distinction between individual and group policies in § 62A.09(3) irrational.

## III.  CONCLUSION

Because § 62A.09(3) unambiguously states § 62A.04 does not apply to the Hartford group policy and the legislative distinction between individual and group policies does not violate the principles of equal protection under the United States

-14-

and Minnesota constitutions, we affirm the district court's conclusion Walker's suit was untimely.

_____