# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3629

_____

Jimmy Duane Weed

*Plaintiff - Appellant*

v.

Corporal T.R. Jenkins; Colonel Ronald K. Replogle; Colonel Sandra K. Karsten

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 6, 2017
Filed: October 17, 2017

_____

Before COLLOTON and BENTON, Circuit Judges, and GERRARD,[1] District Judge.

_____

BENTON, Circuit Judge.

Jimmy Duane Weed participated in a highway overpass protest. Due to traffic safety concerns, state troopers told the protesters to disperse. Weed did not comply.

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska, sitting by designation.

He was arrested. Weed sued, alleging that his arrest violated the First and Fourth Amendments and that the statute authorizing the arrest is invalid. The district court[2] granted summary judgment. *Weed v. Jenkins*, 2016 WL 4420985 (E.D. Mo. Aug. 18, 2016). Weed appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On Saturday, August 17, 2013, Weed and others held signs protesting the President's policies, from a pedestrian sidewalk on an overpass over Interstate 70 in St. Charles, Missouri. Protesters faced the highway below, targeting motorists.

Traffic that day was more congested than usual. The highway's left lane was closed for construction. A festival taking place nearby was accessible by the next exit. At that exit, there was construction for traffic leaving the highway. The traffic approaching the protest was heavy and intermittently congested, backing up to the next exit.

That day there were five accidents on the stretch of highway approaching the protestors. One occurred before they arrived. A Missouri Department of Transportation worker told the investigating officer that the protesters were causing a traffic safety hazard. Investigating the second accident, a state trooper "observed drivers making evasive maneuvers and honking their horns in response to protesters standing on [the] overpass above." The driver in the third accident told the investigating trooper "he was distracted by protesters above on the overpass, and that the crash would not have occurred if the protesters had not been there." A driver and passenger in the fourth accident said that "the crash occurred because too many people were looking up at the protesters and not paying attention to the road." The

[2]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

trooper investigating that accident "was almost struck by a car that swerved to avoid hitting another car" and "observed numerous vehicles change lanes when it was unsafe to do so, drivers slam on their brakes, and vehicles run off the road into the grass to avoid collisions." The driver and passenger of the car hit in the fifth accident also said the protesters were distracting.

Corporal T.R. Jenkins—the highest ranking officer from the Missouri State Highway Patrol (MSHP) that day—was responsible to decide whether to ask the protesters to leave. The troopers who investigated the accidents told Jenkins that the protesters were creating a traffic safety hazard, causing or contributing to the accidents. After the third accident, Jenkins was not personally convinced that the protesters were causing or contributing to the accidents and decided to take a "wait and see" approach. Jenkins went to assist at the scene of the fifth accident. He noted that traffic was heavier than earlier that day. The trooper who had investigated the fourth and fifth accidents told him she had observed unsafe driving, had almost been hit, and that the motorists in the accidents thought the protesters were the cause. Jenkins had also been told that "numerous persons had called the MSHP and reported the protesters were causing a distraction."

Jenkins determined "that the protesters were creating a traffic hazard and causing or contributing to traffic accidents." He decided they should be removed from the overpass. After the St. Charles police refused to remove them, Jenkins sent MSHP officers to the overpass. When Jenkins arrived, most of the protesters were already dispersing, but Weed and another protester were arguing with two other officers. The officers explained several times why they were asking them to leave the overpass and said they could return another time. Weed maintained he had a right to be on the overpass and believed that because he had only been "asked" to leave, he had no obligation to do so. Jenkins asked Weed whether he was going to leave and said that if he did not, he would be arrested. Weed refused to leave. Jenkins arrested

-3-

him for willfully opposing a member of the highway patrol in violation of § 43.170 RSMo.

A week later, Weed returned to the same overpass for another protest. No one was arrested. He has since attended many other overpass protests.

Weed sued Jenkins and the MSHP Superintendent, seeking damages as well as declaratory and injunctive relief. The district court granted summary judgment against Weed. He appeals.

## II.

Both constitutional claims and a grant of summary judgment are reviewed de novo. ***Walker v. Hartford Life & Accident Ins. Co.***, 831 F.3d 968, 973 (8th Cir. 2016); ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**.

## A.

Weed argues that Jenkins's order to disperse violated the First Amendment. Weed says that the order also violated due process because it was void for vagueness. This court need not reach the merits of those issues due to the doctrine of qualified immunity.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Pearson v. Callahan***, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "In

determining whether a right is clearly established, we ask 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" ***Frye v. Kansas City Missouri Police Department***, 375 F.3d 785, 789 (8th Cir. 2004), *quoting **Saucier v. Katz***, 533 U.S. 194, 201 (2001).

Weed argues that *Stahl v. City of St. Louis*, 687 F.3d 1038 (8th Cir. 2012), put Jenkins on notice that his order was clearly unlawful. Weed's premise is that the order was issued under § 43.170 RSMo. That law prohibits "willfully resist[ing] or oppos[ing] a member of the patrol in the proper discharge of his duties." **§ 43.170 RSMo**.

But § 43.170 RSMo applies only after an individual fails to comply with a trooper's "proper" order—that is, one issued under *another* law. Here, that other law is a local ordinance. St. Charles ordinance § 340.020 makes it "unlawful for any person to obstruct in any manner any . . . public highway . . . by hindering or impeding or tending to hinder or impede the free and uninterrupted passage of vehicles." *See **Crooks v. Lynch***, 557 F.3d 846, 848 (8th Cir. 2009) (recognizing this court may take judicial notice of public records); ***Newcomb v. Brennan***, 558 F.2d 825, 829 (7th Cir.1977) ("[M]atters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice.").

Although *Stahl* involves an ordinance like the St. Charles ordinance, *Stahl* addresses a constitutional challenge to the ordinance itself. ***Stahl***, 687 F.3d at 1040 n.1. This case revolves around Jenkins's conduct, not a constitutional challenge to St. Charles ordinance § 340.020.

Jenkins's conduct matches the officer's conduct in the *Frye* case. *See* 375 F.3d at 787-90; *see also **Stahl***, 687 F.3d at 1040 n.1 (noting *Frye* is consistent with *Stahl*). There, this court holds that officers arresting protesters who refuse to stop displaying

graphic posters—causing traffic obstruction—impose a reasonable, content-neutral restriction and are entitled to qualified immunity. *Frye*, 375 F.3d at 787-90, 792. "[T]he Supreme Court 'has regularly rejected the assertion that people who wish to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'" *Id.* at 790, *quoting United States v. Grace*, 461 U.S. 171, 177–78 (1983) (internal quotation marks omitted). "[A]n officer on duty in the field is entitled to make a reasonable interpretation of the law he is obligated to enforce." *Id.* at 789, *quoting Habiger v. City of Fargo*, 80 F.3d 289, 296 (8th Cir. 1996).

Jenkins could reasonably interpret St. Charles ordinance § 340.020 to forbid overpass protests that hinder or impede vehicular traffic. The ordinance authorized Jenkins to issue a proper order to disperse. The doctrine of qualified immunity protects Jenkins from First Amendment damages because he had no reason to know, based on preexisting law, that his order was unlawful.

B.

Invoking the Fourth Amendment, Weed also seeks damages for his arrest. But: "In a claim for damages, officers are 'entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable'—that is, officers are not liable if they had 'arguable probable cause' to make the arrest." *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012), *quoting Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008).

Weed resisted the order to disperse—an order that a reasonable officer could consider proper under preexisting law. Section 43.170 RSMo prohibits resisting a proper order. Jenkins had "arguable probable cause" to arrest Weed under § 43.170

RSMo.  Qualified immunity protects Jenkins from the Fourth Amendment damages claim.[3]

C.

Weed seeks a declaratory judgment that § 43.170 RSMo facially violates the First Amendment as overbroad, with an injunction on its enforcement.  "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999), *quoting Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

In *McDermott v. Royal*, 613 F.3d 1192, 1193 (8th Cir. 2010), the plaintiff brought an overbreadth challenge to an ordinance that: "No person shall resist or obstruct a city officer making an arrest . . . or executing or attempting to execute any other duty imposed upon him by law."  This court holds that the ordinance was not overbroad because "the terms . . . 'obstruct' and 'resist' . . . cover only physical acts or fighting words and do not give officers unfettered discretion to make arrests for mere words that annoy them."  *Id.* at 1194.

The "resist or obstruct" terms in *McDermott* parallel the "resists or opposes" terms in § 43.170 RSMo.  "It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).  Section 43.170 RSMo is not overbroad.

---

[3] To the extent Weed seeks damages against the (then) MSHP superintendent, Colonel Replogle, his claim fails because the colonel was not personally involved in the incident.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

D.

Weed argues that § 43.170 RSMo violates the First Amendment as applied to him. On the facts here, any restraint on Weed's speech resulted from St. Charles ordinance § 340.020—not from § 43.170 RSMo, the statute authorizing the arrest. Therefore, § 43.170 RSMo is not unconstitutional as applied.

E.

Weed claims that § 43.170 RSMo, on its face, violates due process by being vague. "Under the void-for-vagueness doctrine, a law is unconstitutional if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013), *quoting United States v. Williams*, 553 U.S. 285, 304 (2008).

In *Cameron v. Johnson*, 390 U.S. 611, 615-16 (1968), the plaintiffs brought a facial vagueness challenge to a statute forbidding "picketing . . . in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from . . . any county courthouses . . . ." The Supreme Court explains that the terms "obstruct" and "unreasonably interfere" was not unconstitutionally vague because they "plainly require no guessing at their meaning" and are "words of common understanding." *Id.* at 616 (internal quotation marks and alterations omitted).

Like "obstruct or unreasonably interfere," the terms "willfully resists or opposes" in § 43.170 RSMo are "words of common understanding." Section 43.170 RSMo is not unconstitutionally vague.

F.


Weed sought an injunction against a "policy" of the highway patrol to remove protestors from overpasses. He also sought a declaratory judgment that the policy was unconstitutional. But as the district court explained, "Weed presented no facts in support of his contention that [the MSHP Superintendent] has a policy of removing highway protestors."


\* \* \* \* \* \* \*


The judgment is affirmed.

_____