PER CURIAM: *
Plaintiff-Appellant Barbara Jeannette Singleton (“Singleton”) filed this action under 42 U.S.C. § 1983 against Defendant-Appellee Michael Darby (“Darby”). Singleton claims that Darby retaliated against her for exercising her First Amendment rights. She also claims that Darby subjected her to excessive force in violation of the Fourth Amendment. Singleton appeals the district court’s order granting summary judgment in Darby’s favor on both of her claims. We affirm.
I.
On November 19, 2012, citizens opposed to the Keystone XL Pipeline conducted a protest at Farm to Market Road 1911 in Cherokee County, Texas. Approximately eighty people attended the protest, including Singleton, a retired schoolteacher who opposes the pipeline. Although a few of the protestors, including Singleton, were older persons, and a few of the protestors were confined to wheelchairs, a video taken at the protest demonstrates that a large number of the protestors were young and able-bodied.'
The Cherokee County Sheriffs Department dispatched a truck carrying a cherry picker to the site of the protest to remove protestors from nearby trees. The Sheriffs Department also dispatched Darby, a deputy sheriff sergeant, to ensure that the protest remained under control.
The truck arrived at the scene first, with Darby following behind in his police ear. Some of the protestors, including Singleton, became concerned that the truck was about to run over a young demonstrator. Accordingly, they entered the road and began screaming at the driver to stop. One protestor banged on the hood of the truck, jumped on the vehicle, and opened the door to make the driver stop. Upon witnessing the protestor climb on the truck, Darby exited his vehicle and began walking toward the protestor. Before the protestor reached the driver of the truck, he jumped off the truck and fled.
At some point, the young demonstrator in the path of the oncoming truck stood up and moved out of the way. Several protestors nevertheless remained in or entered the road to prevent the cherry picker from reaching the protestors in the trees. The video shows several protestors leaning against the grill of the truck and inviting about a dozen other protestors into the road to block the truck’s path. Singleton remained in the road during this time.
Darby walked toward the protestors blocking the truck, including Singleton, and ordered them to “[g]et out of the road.” The protestors did not obey his command. Approximately five seconds later, Darby leveled a stream of pepper *193 spray toward Singleton and several other protestors in the road. Darby did not spray any of the protestors on the sides of the road who were not obstructing traffic.
Singleton described the burning in her eyes as extremely painful. After Singleton left the protest, she visited her doctor, who treated and released her that same day.
Singleton alleged that Darby violated her constitutional rights under the First and Fourth Amendments by using pepper spray on her. The district court concluded that Darby was entitled to qualified immunity from Singleton’s suit, and accordingly granted summary judgment in Darby’s favor.
II.
We review a district court’s grant of summary judgment de novo.[1] Summary judgment is proper if the record demonstrates no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[2]
Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. A court of appeals need not rely on the plaintiffs description of the facts where the record discredits that description but should instead consider “the facts in the light depicted by the videotape.”[3]
III.
To survive summary judgment on her First Amendment retaliation claim, Singleton must, among other things, produce sufficient evidence that (1) she was “engaged in constitutionally protected activity;” (2) Darby’s actions caused her “to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;” and (3) Darby’s adverse actions “were substantially motivated against [her] exercise of constitutionally protected conduct.”[4]
We conclude that Singleton failed to demonstrate a genuine dispute of material fact as to the first of these elements. The First Amendment does not entitle a citizen to obstruct traffic or create hazards for others.[5] A State may therefore enforce its traffic obstruction laws without violating the First Amendment, even when the suspect is blocking traffic as an act of political protest.[6] The video demonstrates that Singleton and her compatriots were obstructing traffic in violation of Texas law.[7] Thus, Singleton was not engaging in constitutionally protected activity at the time Darby pepper sprayed her.
The dissent contends that Singleton’s earlier protest on the side of the road constitutes the necessary protected activity. But Singleton never made this argu *194 ment, and for good reason: Singleton was in the street by the time Darby arrived. Darby therefore never witnessed Singleton’s protected activity, so there would be no basis for finding he retaliated against that earlier roadside activity if Singleton had raised this claim.
Singleton has likewise failed to create a fact issue on the motivation element. The record fails to show that Darby pepper sprayed the protestors for any reason other than to clear the road and to allow the cherry picker to get through the blockade. Darby did not disturb any of the protestors lawfully exercising'their speech and assembly rights along the sides of the road.[8] Moreover, Darby ordered Singleton and her fellow protestors to “get out of the road,” rather than to cease the protest entirely. This affirmatively demonstrates that Darby pepper sprayed Singleton and her group not because they were protesting, but because they were blocking traffic in violation of Texas law.
For these reasons, the district court properly granted summary judgment in Darby’s favor on Singleton’s First Amendment retaliation claim.
IV.
We now consider Singleton’s excessive force claim. To survive summary judgment, Singleton must, inter alia, demonstrate that Darby’s use of force was objectively, unreasonable under the circumstances and under current law.[9] “Once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record,” the objective reasonableness of Darby’s actions “is a pure question of law.”[10] The qualified immunity doctrine, “even on summary judgment, ‘gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.’ ” [11]
“ ‘To gauge the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force,’ paying ‘careful attention to the facts and circumstances of each particular case.’ ”[12] Even at the summary judgment stage, “[w]e must evaluate an officer’s use of force ‘from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.’ ”[13] “The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situ *195 ation.”[14]
For the following reasons, Darby’s use of force was not objectively unreasonable. First, although Singleton’s crime was not particularly severe, she was blocking traffic in violation of Texas law,[15] and the State of Texas has an interest in keeping its roads free of obstructions.[16]
Secondly, a reasonable officer would have concluded that the protestors posed a threat to Darby, the driver of the truck, the truck itself, or to others. The protestors vastly outnumbered Darby. Darby saw one of the demonstrators climb onto the truck, bang on its hood, and open the truck’s door. The video shows several young protestors leaning against the grill of the truck and inviting other protestors to block the vehicle. Because numerous other protestors remained crowded around the truck, a reasonable officer could have believed that other protestors might climb on the truck or attack the driver. A reasonable officer in Darby’s position could have reasonably concluded that the protestors were out of control and that the situation required definitive action to move the truck past the demonstrators and out of danger.
Third, Singleton and her compatriots resisted Darby’s attempt to clear the road. Singleton admits that she heard Darby’s warning before he pepper sprayed her group. The video demonstrates that Darby gave Singleton sufficient time to at least begin walking out of the road before he deployed the pepper spray. Singleton nevertheless did not move. Although Singleton testified in her deposition that Darby did not give her enough time to react, we must credit the video evidence over Singleton’s contrary testimony.[17]
Thus, Darby, as a reasonable officer, was justified in using some degree of force to clear the road. The force Darby employed was not disproportionate to the need. Deploying pepper spray was not an unreasonable way to defuse the situation. Indeed, it was probably the least intrusive means available to Darby. To reiterate, the protestors vastly outnumbered Darby. As one of only two police officers on the scene,[18] Darby could not have individually handcuffed and arrested each of the numerous protestors blocking the road. In addition to the obvious difficulty of one officer attempting to .handcuff so many violators, Darby faced the likelihood that such an action could motivate a larger number of protestors lining the road to join in the road-blocking enterprise or otherwise retaliate against Darby. Darby’s decision to utilize pepper spray was therefore not an unreasonable way to gain control of a potentially explosive situation.
Moreover, even assuming arguendo that Darby’s use of force did violate Singleton’s constitutional rights, Singleton would still need to also demonstrate that those rights were “clearly established” at the time of her injury.[19] The dissent con *196 tends, that Singleton has satisfied this prong of the qualified immunity analysis because
at the time of the pepper-spraying incident, Singleton had a clearly established right to be free from excessive force and it was clearly established that the amount of force that Darby could use depended on the severity of the crime at issue, whether the suspect posed a threat to the officer’s safety, and whether the suspect was resisting arrest .or attempting to flee.[20]
However, the Supreme Court recently repeated its warning against defining the law in question “at a high level of generality.”[21] In doing so, the Supreme Court rejected the lower court’s reliance on a generalized assessment of the Gmham factors for overcoming qualified immunity in an excessive force case — the same analysis the dissent employs to try and defeat qualified immunity here.[22] Instead, to overcome qualified immunity, the plaintiff must identify case law clearly establishing that the “official acted reasonably in the particular circumstances that he or she faced.”[23] Notably, the dissent is unable to point to case law with facts anywhere close to the particular circumstances involved here— the use of pepper spray to clear a road filled with protestors who vastly outnumbered law enforcement — that would have placed Darby on notice that his conduct was unlawful.
Thus, viewing the facts through the deferential lens of qualified immunity and from the perspective of a reasonable officer on the scene, we conclude that Darby’s use of force was not objectively unreasonable under the circumstances. At a minimum, case law did not make it clear to every reasonable officer that use of pepper spray in this situation was unreasonable.[24] The district court therefore properly granted summary judgment in Darby’s favor.
AFFIRMED.

 Pursuant to 5th Or. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Or. R. 47.5.4.

. Kitchen v. Dallas Cnty., Tex., 759 F.3d 468, 476 (5th Cir.2014) (citing Deville v. Marcantel, 567 F.3d 156, 163-64 (5th Cir.2009); Burge v. Parish of St. Tammany, 187 F.3d 452, 464 (5th Cir.1999)).

. Id. (citing Deville, 567 F.3d at 163-64; Burge, 187 F.3d at 464-65).

. Carnaby v. City of Hous., 636 F.3d 183, 187 (5th Cir.2011) (quoting Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

. Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir.2002) (citations omitted).

. Cox v. Louisiana, 379 U.S. 536, 553-58, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Frye v. Police Dep’t of Kan. City, Mo., 260 F.Supp.2d 796, 799 (W.D.Mo.2003).

. Cox, 379 U.S. at 553-58, 85 S.Ct. 453.

. Tex Penal Code Ann. § 42.03(c) (West 2014).

. Compare McCarthy v. Barrett, 804 F.Supp.2d 1126, 1138 (W.D.Wash.2011) (holding that a jury could infer that defendant officers "desirefd] to silence the protestors' speech” where officers "launchfed] tear gas into an entire crowd” of protestors rather than solely at the "aggressive” protestors demonstrating "near the line of police officers”).

. Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir.2004) (citing Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir.2000)).

. Scott v. Harris, 550 U.S. 372, 381 n. 8, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (emphasis and internal quotations omitted).

. Poole v. City of Shreveport, 691 F.3d 624, 628 (5th Cir.2012) (quoting Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008)).

. Ramirez v. Knoulton, 542 F.3d 124, 129 (5th Cir.2008) (quoting Flores, 381 F.3d at 399).

. Poole, 691 F.3d at 628 (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

. Graham, 490 U.S. at 396-97, 109 S.Ct. 1865.

. Tex. Penal Code Ann. § 42.03(c) (West 2014).

. See Cox, 379 U.S. at 554-55, 85 S.Ct. 453.

. See Carnaby, 636 F.3d at 187 (quoting Scott, 550 U.S. at 381, 127 S.Ct. 1769).

. The video depicts a second man in a white shirt and tie with a badge and a handgun in a holster accompanying Darby, but the record does not identify this man or his position with law enforcement. Even though Darby was not alone, the protestors still greatly outnumbered law enforcement officers at the scene.

. See Hernandez v. United States, 785 F.3d 117, 119-20 (5th Cir.2015) (en banc) (quoting Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

. (Internal citations, brackets, and ellipses omitted.).

. Plumhoff v. Rickard, - U.S. -, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)).

. See id.

. Id.

. See Ashcroft, 131 S.Ct. at 2083.