

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00303-CR
No. 07-22-00304-CR
No. 07-22-00305-CR

**TORREY LYNNE HENDERSON, AMARA JANA RIDGE,
AND JUSTIN ROYCE THOMPSON, APPELLANTS
V.**

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the County Court at Law
Cooke County, Texas[1]
Trial Court Nos. CR20-65983, CR20-65984, CR20-65985, Honorable John H. Morris, Presiding

November 15, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Torrey Lynne Henderson, Amara Jana Ridge, and Justin Royce Thompson, Appellants, appeal from their convictions for the misdemeanor offense of obstructing a highway or passageway.[2]  We affirm.

---

[1] These appeals were transferred to this Court from the Second Court of Appeals by docket equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001.

[2] *See* TEX. PENAL CODE ANN. § 42.03(a)(1).

BACKGROUND

On August 30, 2020, Appellants participated in a protest in Gainesville calling for the removal of a Confederate monument on the lawn of the Cooke County Courthouse. A group called Progressive Rights Organizers (PRO) Gainesville, of which Appellants were leaders, organized the event. PRO Gainesville had released a press statement three days earlier regarding the protest. On the day of the event, a group of protestors gathered on the courthouse lawn. Counter-protestors gathered across the street. Several law enforcement officers were on duty at the event to, as one officer testified, "keep the peace and provide safety for all parties involved."

After a few people gave speeches, about thirty or forty people began marching eastward along California Street, a state highway.[3] Initially, the marchers were on the sidewalk. At times, individuals moved off the sidewalk into the street. A Gainesville police officer who was monitoring activities that day testified that he told marchers to get back on the sidewalk. After walking about six blocks to Denison Street, the group walked across California Street, crossing where there was no stop sign or stoplight. They then walked west, returning to the courthouse. The march ended after ten or eleven minutes. No arrests were made that day.

On September 3, 2020, Appellants were arrested and charged with the offense of obstructing a highway or passageway. All three pleaded not guilty and the case proceeded to a jury trial. The jury found each appellant guilty and assessed identical

---

[3] Captain Chris Garner testified that California Street is "the main avenue for our emergency vehicle traffic, EMS, fire department, [and] police."

punishments: confinement in the county jail for seven days and a fine of $2,000. This appeal followed.

**ANALYSIS**

<u>Issues 1–4: Sufficiency of the Evidence</u>

In their first four issues, Appellants argue that the evidence is insufficient to support their conviction because (1) they were continuously marching along a passageway; (2) there is no evidence that they caused any obstruction by rendering a passageway impassable or unreasonably inconvenient or hazardous; (3) there is no evidence they had the requisite *mens rea* of "intentionally and knowingly" obstructing a passageway; and (4) they were given the legal privilege and authority to walk along the sidewalk and street by police.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring). When reviewing all the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 & n.26. In our review,

3

we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See id.* at 899. Thus, even if we would have resolved the conflicting evidence in a different way, we must defer to the jury's findings that are supported by sufficient evidence. *Id.* at 901–02 (discussing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).

> The relevant portion of section 42.03 of the Texas Penal Code provides:
>
> (a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:
>
> (1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others;
>
> . . .
>
> (b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

TEX. PENAL CODE ANN. § 42.03.[4]

The evidence presented at trial included the following. Gainesville Police Department Sergeant Jack Jones testified that he was the leader of the department's special response team on August 30, 2020, and observed the events outside the courthouse and on California Street. During Jones's testimony, the trial court admitted into evidence a video recording taken that day. The video reflected that group members

---

[4] The complaint and information for each Appellant was identical and largely tracked the statute, alleging that each "did then and there without legal privilege or authority, intentionally and knowingly obstruct, by rendering impassable or by rendering passage unreasonably inconvenient or hazardous, a street, namely California Street, to which the public or a substantial group of the public had access, by walking in the roadway with a group [Appellant] had organized, causing it to be impassable or hazardous for motorist[s] or pedestrians."

began walking on the sidewalk and on the shoulder of the highway. When the group crossed California Street, both westbound and eastbound traffic came to a stop. As the group walked back to the courthouse, they encountered a large puddle of water next to the sidewalk. Some marchers stayed on the sidewalk, some on the shoulder, and some in the roadway. More group members entered the roadway as the march continued. By the time they reached the courthouse, most marchers were in the street. They walked roughly five abreast, stretching from the shoulder to the roadway's center yellow line.[5]

Captain Garner testified that the place where the group crossed California Street is not a controlled intersection and has no crosswalk. He observed westbound and eastbound vehicles "having to come to a stop" there as the group crossed the street.[6]

Gainesville Police Department Investigator Shane Greer, who was directed to monitor the march, testified that he observed some participants get into the street while they walked east. He told marchers to get back on the sidewalk "approximately ten times." At the intersection of Denison Street and California Street, someone on a bicycle positioned himself in the intersection and "shut down eastbound and westbound traffic." Greer observed "multiple vehicles stopped westbound and eastbound." When the marchers crossed California Street and began their westbound return walk, Greer instructed marchers on the roadway to get back onto the sidewalk, and they complied. However, once the group reached the post office, "the majority of the group entered the

---

[5] Evidence presented at trial showed that the two lanes of the roadway were divided by double yellow lines, indicating a no-passing zone.

[6] Texas law provides that a pedestrian shall yield the right-of-way to a vehicle on the highway if crossing a roadway at a place other than in a marked crosswalk or in an unmarked crosswalk at an intersection. *See* TEX. TRANSP. CODE ANN. § 552.005(a).

roadway into the lane of traffic." Greer again told them to exit the roadway, but they disregarded his commands. More people then entered the roadway. Greer testified that he told Appellants that they needed to get out of the roadway. He specifically identified Appellant Thompson, who was at the rear of the group near Greer. He further testified that he made eye contact with Appellant Henderson and told her to exit the roadway. She looked at him and shook her head. Then Henderson and other group members began chanting, "Whose streets? Our streets." The crowd remained on the street. Greer testified that no vehicles could get around the group and that California Street was obstructed. It remained obstructed until the group returned to the courthouse.

Additionally, the State presented witness Cynthia Idom, who was driving east on California Street at the time of the march. Idom testified that she noticed the group of people on the south side of California. A young man on a bicycle suddenly cut in front of her, causing her to stop abruptly. She said she "had to stop pretty quick or [she] would have hit him." Idom testified that the man "put his hand out for me to stop. And then a young lady walked beside him with her long rifle . . . . I sat there and waited and they kind of just watched me and I watched them." While Idom was stopped, the marchers crossed California Street. She testified that she waited for all of them to get across the roadway before she could continue driving. She was unsure of how long she was stopped but stated that "it felt longer than I'm sure it was." She agreed it was "between maybe twenty seconds to a minute and a half."

Finally, Gainesville Chief of Police Michael Phillips testified that his agency brought in staffing and made accommodations for the August 30 protest at the courthouse. An area outside the courthouse was established for protestors and another area was set up

6

across the street for the "counter-protest presence." He testified that the marchers did not have a permit to march on California Street that day and that nobody had applied for permission to use California Street for a march that day. Phillips had previously explained to PRO Gainesville leaders that using the sidewalks for marching was allowed, but marching in the streets was not. Phillips testified that no vehicular patrol was assigned for a march and that no officers were assigned to conduct traffic control or escort a march. He said the police department "had not prepared for that type of mobile event."

In their first argument, Appellants assert that section 42.03 is not violated by people engaged in continuous moving or marching. We find no merit in Appellants' argument. The statute contains no requirement that an obstruction must be stationary, and we will not read such a requirement into the statute. The evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that Appellants, even if they were continuously marching, obstructed the highway. We overrule Appellants' first issue.

Appellants next argue that there is no evidence that they rendered any passageway unreasonably inconvenient or hazardous. "Obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous. TEX. PENAL CODE ANN. § 42.03(b). As set forth above, Greer testified that traffic on California Street was stopped due to the presence of the crowd in the roadway. Officer Greer not only testified that Appellants were leaders of PRO Gainesville, which organized the event, but he also positively identified all three as active participants in the march that obstructed the roadway. Idom testified that she had to stop her vehicle on the roadway because the crowd walked across the street in front of her.

7

We conclude that this evidence is sufficient to support the jury's finding that the highway was rendered impassable or that passage was unreasonably inconvenient or hazardous. *See, e.g., Haye v. State*, 634 S.W.2d 313, 315 (Tex. Crim. App. 1982) (holding that individual standing in middle of sidewalk, forcing pedestrian to walk around in mud, sufficient to support finding that obstruction of sidewalk rendered passage unreasonably inconvenient); *Robles v. State*, 803 S.W.2d 473, 476–77 (Tex. App.—El Paso 1991, no pet.) (evidence was sufficient to support finding that passage to medical facility was impassable and defendant caused inconvenience even though witness could have stepped over or around protestor to enter building); *Lauderback v. State*, 789 S.W.2d 343, 346–47 (Tex. App.—Fort Worth 1990, writ ref'd) (where appellant blocked one lane of traffic, passage rendered unreasonably inconvenient or hazardous). We overrule Appellants' second issue.

In their third issue, Appellants urge that the evidence does not support a finding that they knowingly and intentionally obstructed the street. "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). The language of the jury charge tracked these definitions.

Proof of intent generally relies on circumstantial evidence. *Haye*, 634 S.W.2d at 315. A jury may infer intent from a defendant's acts, words, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). We must scrutinize circumstantial evidence of intent as we do other elements of an offense. *Laster v. State*, 275 S.W.3d

8

512, 519–20 (Tex. Crim. App. 2009).  If the record supports conflicting inferences, we "'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and [we] must defer to that resolution.'"  *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991) (quoting *Farris v. State*, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990)).[7]

There was testimony that Appellants were instructed, both prior to the march and during the march, to stay on the sidewalks.  Appellant Thompson testified that, before the march, he made a speech to the protesters in which he reviewed "a few rules, including staying hydrated and staying on sidewalks . . . ."  Officer Greer testified that he told the marchers to get out of the street and back on the sidewalk "approximately ten times."  The evidence also showed that, despite being informed of the need to stay on the sidewalk, Appellants entered the roadway and maintained their presence in the roadway.  Witnesses identified Appellants Henderson and Ridge walking next to each other at the front of the group of protesters in California Street.  Appellant Henderson was specifically instructed to get off the roadway by Officer Greer.  She shook her head and the protesters then began chanting, "Whose streets?  Our streets."[8]  Garner testified that when he told Appellant Thompson the marchers were not getting out of the roadway, Thompson said he had "no clue" and "just shrugged [him] off."  Thompson admitted that he walked for "at

---

[7] In support of their argument that they lacked the requisite *mens rea*, Appellants rely, in part, on their own testimony from the punishment phase of the trial.  In a bifurcated trial before a jury on a plea of not guilty, "'our consideration of the evidence is necessarily limited to that evidence before the jury at the time it rendered its verdict of guilt.'"  *Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001) (en banc) (quoting *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App. 1993) (en banc)).  Therefore, we do not consider evidence from the punishment phase of the trial when determining the sufficiency of the evidence to support Appellants' convictions.

[8] The evidence showed that Appellants Henderson and Ridge carried a megaphone at the front of the group and that Appellant Thompson, who was near the rear of the group, also had a megaphone.

least two blocks in the street." Finally, a video of the entire march was played for the jury. It was the jury's task to review the video and other evidence and draw its own conclusions about Appellants' knowledge and intent. Considering all the evidence in the light most favorable to the jury's verdict and deferring to the jury's implicit inference about the weight of the evidence, a reasonable juror could find that Appellants knowingly and intentionally obstructed the street. We conclude that the evidence sufficiently establishes that Appellants possessed the requisite intent to commit the offense in question. Appellants' third issue is overruled.

Appellants next argue that "[e]ven if simply stepping onto California Street were considered an obstruction, the evidence is insufficient to prove [they] lacked the legal privilege or authority to walk on California Street." Appellants did not offer evidence that any authorized official gave them permission to walk in the street, but argued that officers "tacitly permitted" the march by "accompanying" them. Police officers testified that they did not grant Appellants permission to walk in the street. When the group began marching away from the courthouse, some officers were sent with the group to keep people safe, but not to assist the protestors or to direct or stop traffic. Again, Officer Greer testified to telling marchers to stay on the sidewalk multiple times. We conclude the evidence was sufficient to prove that Appellants lacked legal privilege or authority to walk on California Street. We overrule Appellants' fourth issue.

Issue 5: First Amendment Privilege

The fifth issue raised by Appellants alleges that they had the legal privilege and authority to walk along the sidewalk and street under the First Amendment. They claim

that their peaceful march in a street, "a quintessential public forum," was consistent with the exercise of First Amendment freedoms.

Free speech guarantees are not absolute. The State may reasonably regulate the time, place, and manner of the exercise of First Amendment rights as necessary to the protection of other compelling state interests. *Grayned v. City of Rockford*, 408 U.S. 104, 115–16, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *Lauderback*, 789 S.W.2d at 347 (citing *Palmer v. Unauthorized Practice Comm. of the State Bar of Texas*, 438 S.W.2d 374, 377 (Tex. Civ. App.—Houston [14th Dist.] 1969, no writ) for the proposition that free speech guarantees in both the United States Constitution and the Texas Constitution must yield to the extent necessary to protect public interest). The First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that one desires. *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981). For example, "[t]he First Amendment does not entitle a citizen to obstruct traffic or create hazards for others." *Singleton v. Darby*, 609 F. App'x 190, 193 (5th Cir. 2015) (per curiam). "A State may therefore enforce its traffic obstruction laws without violating the First Amendment, even when the suspect is blocking traffic as an act of political protest." *Id.; see, e.g., Shuttlesworth v. Birmingham*, 382 U.S. 87, 100, 86 S. Ct. 211, 15 L. Ed. 2d 176 (1965) (Fortas, J., concurring) (observing that "[c]ivil rights leaders, like all other persons, are subject to the law and must comply with it. Their calling carries no immunity. Their cause confers no privilege to break or disregard the law."). The State clearly has the power under the First Amendment to regulate use of streets and roadways for the access and safety of the public. *See Haye*, 634 S.W.2d at 315 (holding that section 42.03 protects public's right to reasonably convenient use of passageways without encroachment upon First Amendment rights).

Moreover, the record establishes that the City of Gainesville had adopted procedures by which people could obtain a permit to have a march, demonstration, or parade on its streets, including the state highway also known as California Street. It is uncontested that Appellants neither sought nor obtained a permit from the city for their march on August 30, 2020. Appellants argue that, if their convictions were predicated on their lack of an official permit, their convictions should be overturned due to Gainesville officials' unconstitutional application of the permit policy. An "as-applied" challenge to a statute asserts that a statute, although generally constitutional, operates unconstitutionally as to the claimants because of their circumstances. *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006). To complain about the constitutionality of an ordinance as applied, defendants must raise the issue at trial. *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (en banc); *see* TEX. R. APP. P. 33.1(a). Appellants do not direct us to any point in the record reflecting that they raised this issue, nor has our review revealed such an objection. Therefore, this issue was not properly preserved for this Court's appellate review.

Because Appellants have not established that the First Amendment secured an absolute privilege allowing them to march in California Street, we overrule their fifth issue.

Issues 6–9: Jury Charge Errors

Appellants' sixth through ninth issues claim various errors in the jury charge. An analysis of a claim of error in the jury charge involves two steps: we first determine whether the charge is erroneous and, if so, we then decide whether an appellant was harmed by the erroneous charge. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). If error occurred in a jury charge, whether it was preserved determines the

12

degree of harm required for reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g).

In issue six, Appellants assert the trial court erred by including the following instruction in the abstract portion of the charge:

> A person commits an offense if . . . the defendant intentionally, knowingly, obstructs a highway, street or sidewalk . . . [or] disobeys a reasonable request or order to move issued by a person the actor knows or is informed is a peace officer, a fireman, or a person with authority . . . to prevent obstruction of a highway or any of the other areas set out above.

The instruction tracks the language of sections 42.03(a)(1) and 42.03(a)(2)(A) of the Penal Code. Appellants contend that the inclusion of this language authorized the jury to convict them for an unindicted offense, i.e., section 42.03(a)(2)(A)'s prohibition on "disobeying a reasonable request or order to move."

Since Appellants did not object to the complained-of portion of the charge, we review the record for egregious harm. Assuming, without deciding, that the trial court erred by including language from section 42.03(a)(2)(A) in the abstract portion of the jury charge, we analyze whether the error caused egregious harm justifying reversal.

In determining egregious harm, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. "Egregious harm is a high and difficult standard to meet, and such a determination must

13

be borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (internal quotations omitted).

Considering the entirety of the charge, this first factor weighs against a finding of egregious harm. The error appears only in the abstract portion of the charge, not in the application portion. The application paragraph of the charge instructed the jury:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the August 30, 2020, in Cooke County, Texas, [Appellant], did then and there intentionally and knowingly obstruct, by rendering impassable or by rendering passage unreasonably inconvenient or hazardous, a street, namely California Street, to which the public or a substantial group of the public had access, by walking in the roadway with a group the defendant had organized, causing it to be impassable or hazardous for motorists or pedestrians, then you will find the defendant guilty of the offense of obstructing a highway or passageway as charged in the information.

"It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Here, the application paragraph of the charge correctly instructed the jury that it could not convict Appellants unless they found beyond a reasonable doubt that they had obstructed California Street. "Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious." *Roberts v. State*, No. 02-17-00108-CR, 2018 Tex. App. LEXIS 2609, at *8 (Tex. App.—Fort Worth Apr. 12, 2018, no pet.) (per curiam) (mem. op., not designated for publication) (quoting *Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd). The application paragraph did not authorize the jury to convict based on Appellants' disobeying a reasonable request or order to move, but adhered to the offense alleged in the complaint.

14

With respect to the state of the evidence, we recognize that the jury saw and heard evidence showing that marchers were told to leave the street and stay on the sidewalk, and that such orders were not obeyed. However, as set forth above, Appellants' mental state was contested, and the State's evidence that they received and refused orders to exit the street had a bearing on that issue. Additionally, Appellants argued that the presence of the police officers indicated that the marchers were in the roadway with permission; again, evidence the police officers were verbally instructing marchers to get out of the roadway had a bearing on that issue. We conclude that this factor does not weigh in favor of finding that Appellants suffered egregious harm.

When weighing the third factor, argument of counsel, we must determine whether any statements made by the State, Appellants' trial counsel, or the trial court exacerbated or ameliorated the complained-of charge error. *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). Appellants direct us to two places in the record at which the State referred to Appellants' failure to obey a request or order to move. In one instance, the questioning addressed Appellants' mental state, and in the other, it addressed their claim that the officers implicitly permitted them to march in the street. Because these references were not connected to the failure to obey an order to move as a separate offense, we conclude the third factor does not weigh in favor of finding that Appellants suffered egregious harm.

Finally, we consider the record as a whole. Appellants argue that nothing informs the jury to disregard the extraneous definition related to section 42.03(a)(2) and that the jury was allowed to convict them for unindicted offenses. However, as discussed above, the application paragraph of the charge did not authorize the jury to convict Appellants

15

for an unindicted offense. Considering all four *Almanza* factors, we conclude that Appellants did not suffer egregious harm from the complained-of instruction. We overrule issue six.

In issue seven, Appellants contend that the charge was erroneous because it included a conduct-oriented culpable mental state, while obstruction of a passageway is a result-of-conduct offense.[9] Appellants claim that the nature-of-conduct language included in the definition allowed the jury to convict them based solely on their intentional conduct of "being in the street" rather than the result of that conduct: "obstruction." Although the abstract portion of the charge defined the culpable mental states in both conduct-oriented and result-oriented language, the application paragraph instructed the jury that, in order to find Appellants guilty, they were required to find that Appellants did "intentionally and knowingly obstruct, by rendering impassable or by rendering passage unreasonably inconvenient or hazardous, a street . . . ."

The language of the charge is consistent with the definitions and offense as set forth in the Penal Code. *See* TEX. PENAL CODE ANN. §§ 6.03, 42.03. Further, where the Court of Criminal Appeals has not categorized an offense, a trial court does not err by including the statutory definitions of both "intentionally" and "knowingly." *See Murray v. State*, 804 S.W.2d 279, 281 (Tex. App.—Fort Worth 1991, pet. ref'd) ("[W]hen an offense is not clearly categorized as either a 'result' or a 'nature of the conduct' type offense, with respect to the intent and knowledge required, . . . the trial court may submit statutory definitions of 'intentional' and 'knowingly' because both definitions allow the jury to

---

[9] Appellants do not direct us to any court decision establishing that obstructing a highway is a result-of-conduct offense. The Fourth Court of Appeals has concluded that obstructing a highway is a conduct-oriented offense. *See Bailey v. State*, 304 S.W.3d 544, 546 (Tex. App.—San Antonio 2009, pet. ref'd).

16

consider the nature of the offender's conduct or the results of his conduct."). Because a binding court has not definitively determined whether the offense is conduct-based or results-based, we conclude that the trial court did not err by including the definitions of "intentionally" and "knowingly" at issue. We overrule Appellants' seventh issue.

In their eighth issue, Appellants argue that the jury charge is erroneous because it failed to require that the jury's verdict be unanimous with regards to a specific criminal act. Because Appellants did not raise this objection during the charge conference, we review for egregious harm. *Nava*, 415 S.W.3d at 298.

Under the Texas Constitution and Code of Criminal Procedure, a Texas jury must reach a unanimous verdict about the specific crime that the defendant committed. *O'Brien v. State*, 544 S.W.3d 376, 382 (Tex. Crim. App. 2018). The jury must agree that the defendant committed one specific crime, but this does not mean that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act. *Id.* The requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense. *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014); *see also Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) ("The unanimity requirement is undercut when a jury risks convicting the defendant on different acts, instead of agreeing on the same act for a conviction.").

In this case, the evidence at trial indicated that California Street was obstructed at more than one point during the short march. In its closing argument, the State asserted, "California Street became impassable or blocked on three different occasions." Appellants contend that non-unanimity may have resulted in this case because the State

17

charged one offense while it presented evidence that Appellants committed the charged offense on multiple but separate occasions. *See Ngo v. State*, 175 S.W.3d 738, 748 (Tex. Crim. App. 2005) (requiring jury unanimity on the specific crime for which defendant is convicted).

We are not convinced the charge was erroneous. But even if we assume that the trial court erred by not instructing the jury that it was required to unanimously agree on which specific portion of the march satisfied the charge, we nonetheless overrule Appellants' eighth issue because we cannot conclude that any such error caused Appellants egregious harm. *See Wooten*, 400 S.W.3d at 607 (error analysis not required when harm analysis is dispositive). The egregious harm standard is difficult to meet and requires a showing that Appellants were deprived of a fair and impartial trial. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). As set forth above, we consider the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

When considering the entire jury charge, we observe that it contained instructions that jurors were to "unanimously agree[] upon a verdict" and "reach[] a unanimous verdict." The jury charge did not inform jurors that they must reach unanimity as to which portion of California Street was obstructed. However, we note that the charges against Appellants arose from a single transaction, the August 30 march. The application paragraph of the charge tracked the complaint and information, to which Appellants did not object. To convict Appellants, the jury was required to find that they obstructed California Street "by walking in the roadway with a group" Appellants had organized,

18

causing it to be impassable or hazardous. The jury was required to agree on the same act, which caused the same injury, i.e., "walking in the roadway . . . causing it to be impassable or hazardous," for a conviction.[10] The first factor weighs against a finding of egregious harm.

Under the second factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington*, 451 S.W.3d at 841. As summarized above, the jury heard testimony about and viewed photographs and a video recording of the August 30 protest. Appellants' defensive theory of the case was not that Appellants did not march in the roadway as alleged, but that their conduct was authorized or privileged or that any obstruction was not unreasonable. Given the state of the evidence, it is highly unlikely that any juror believed that some of the alleged incidents took place but that others did not. On these facts, the likelihood of non-unanimity is "exceedingly remote." *See Jourdan*, 428 S.W.3d at 98. This factor weighs against a finding of egregious harm.[11]

Under the third factor, we consider whether any arguments of counsel may have exacerbated or ameliorated the error in the charge. *Arrington*, 451 S.W.3d at 844. In voir dire, the State informed jurors that "the verdict has to be unanimous." In closing, the State focused the jurors' attention on the three specific instances of obstruction but did not

---

[10] This is unlike *Ngo*, on which Appellants rely, in which the State sought one conviction with evidence that the defendant committed three different acts that the applicable statute defined as separate criminal offenses. *See Ngo*, 175 S.W.3d at 742.

[11] In response to Appellants' assertion that the evidence was "generalized for an entire group of people and not tethered to Appellants' specific conduct," we note that the jury charge explicitly provided for a conviction only upon a finding of specific conduct by each individual Appellant, namely that said Appellant obstructed California Street "by walking in the roadway," rendering the street impassable.

indicate whether the jury had to be unanimous about which specific incident Appellants committed when reaching their verdict. Unlike *Ngo*, upon which Appellants rely, the prosecution did not affirmatively represent to the jury that it need not be unanimous. *See Ngo*, 175 S.W.3d at 750–51 (in case in which there were three different ways charged offense could have been committed, State improperly argued it could prove one to the satisfaction of part of the jury, another one to the satisfaction of others, and the third one to the satisfaction of another part of the jury). Because the arguments of counsel neither exacerbated nor ameliorated the error, this factor weighs neither for nor against a finding of egregious harm.

We find no additional circumstances that require consideration under the fourth factor. We conclude that, on the particular facts of this case, the failure of the trial court to expressly require juror unanimity, if it was error, neither affected the very basis of the case nor actually operated to deprive Appellants of their valuable right to a unanimous jury. Appellants did not suffer egregious harm. Accordingly, we overrule issue eight.

In issue nine, Appellants assert that the jury charge contained a misstatement of law on their First Amendment defense, specifically the instruction reading, "It is not a defense to the charge of obstructing a highway or passageway that the defendant is involved in a demonstration or protest." Appellants objected to the sentence and asked for it to be struck from the charge. The trial court denied their request. On appeal, Appellants urge that the instruction likely confused the jury and caused Appellants harm because "all three Appellants were deprived of a statutory defense and of their constitutional right to expressive activity as a result of this legally erroneous instruction."

20

Article 36.14 of the Texas Code of Criminal Procedure requires that a trial court provide a jury charge "distinctly setting forth the law applicable to the case . . . ." TEX. CRIM. PROC. CODE ANN. art. 36.14. A jury charge must include instructions informing jurors "under what circumstances they should convict, or under what circumstances they should acquit." *Ex parte Chandler*, 719 S.W.2d 602, 606 (Tex. Crim. App. 1986) (Clinton, J., dissenting) (per curiam) (en banc). "Reversible error in the giving of an abstract instruction generally occurs only when the instruction is an incorrect or misleading statement of law that the jury must understand in order to implement the commands of the application paragraph . . . ." *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (internal quotations omitted).

Here, the instruction was most likely superfluous. However, even assuming the trial court erred in including the complained-of instruction, we must determine whether the error was harmful. When a defendant timely objects, reversal is required if the error caused "some harm" to the defendant. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). "Some harm" requires a finding of "actual harm, as opposed to theoretical harm, as a result of the error." *Id.* After reviewing the entire record, we cannot conclude that Appellants suffered harm from its inclusion.

First, the trial court's instruction that being involved in a demonstration or protest is not a defense to the charged offense is not an incorrect statement of the law. As the Second Court of Appeals held in *Lauderback*, section 42.03 is "limited to the obstruction of highways and there [are] no facial restrictions on free speech." *Lauderback*, 789 S.W.2d at 348 (noting that appellant could have picketed elsewhere, but chose to do it in an area that caused obstruction in highway, so State had interest in removing her); *see*

21

*also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918, 926, 102 S. Ct. 3409, 73 L. Ed. 2d 1215 (1982) (it is well-established that expressive activity is not a defense to an individual's own unlawful conduct). Additionally, Appellants were not deprived of their First Amendment defense. The instruction immediately following the one challenged by Appellants sets forth the defense provided under section 42.04 of the Penal Code, which provides, as a defense to prosecution, that a defendant be given a warning or order to move, disperse, or otherwise remedy the violation prior to a speech-based arrest. *See* TEX. PENAL CODE ANN. § 42.04. Finally, including a merely superfluous abstract instruction never produces reversible error, as it has no effect on the jury's ability to fairly and accurately implement the commands of the application paragraph. *See Plata v. State*, 926 S.W.2d 300, 302–03 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234, 235 (Tex. Crim. App. 1997); *Manrrique v. State*, No. 02-19-00458-CR, 2021 Tex. App. LEXIS 7682, at *28 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication) ("When the application portion of the jury charge correctly tracks the indictment, the error of giving surplus law in the abstract portion of the charge is not reversible.").

We conclude that inclusion of the challenged instruction, even if erroneous, did not cause harm to Appellants. Thus, there is no reversible error. We overrule Appellants' ninth issue.

Issue 10: Failure to Excuse Jurors for Cause

In issue ten, Appellants contend that four prospective jurors should have been excused for cause because they expressed bias against Appellants. To preserve error regarding a trial court's denial of a challenge for cause, the record must show that an

appellant made a clear and specific challenge for cause, that he used a peremptory challenge on that juror, that all his peremptory challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on the jury. *Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016). Here, Appellants' challenges for cause to venire members 9, 10, 15, and 23 were denied by the trial court. Appellants' trial counsel used two of her three peremptory challenges on number 10 and number 23; venire members 9 and 15 sat on the jury. However, Appellants' trial counsel did not use her remaining peremptory challenge on number 9 or number 15, nor did she request additional strikes. Therefore, Appellants have waived any error with respect to this complaint. *See Riddle v. State*, No. 02-02-00157-CR, 2003 Tex. App. LEXIS 2933, at *3–4 (Tex. App.—Fort Worth Apr. 3, 2003, pet. dism'd) (mem. op.) (per curiam). We overrule issue ten.

Issue 11: Ineffective Assistance of Counsel

In their related final issue, Appellants argue that they received ineffective assistance of counsel because their trial counsel failed to seek additional peremptory strikes to ensure that venire members 9 and 15 were not empaneled.[12]

---

[12] Venire member number 9 was asked by the State if she could listen to the court's instructions and follow them in considering the evidence in the case to determine a verdict. She answered, "No. If they were protesting peaceably then we wouldn't be here. I would follow the letter of the law and what the law asked me to do." The trial court then asked, "Once you hear all the evidence and hear the real facts from the witnesses who were there or have knowledge of the situation, could you then make a fair decision as to whether the Defendants are guilty or not guilty?" She answered, "No."

Number 15 stated that she was raised to "believe officers" and agreed that she "would give an officer more credibility just by virtue of [his] being an officer." However, she also revealed that her father, brother, and sister had a negative experience with law enforcement.

To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 691–92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. For an appellate court to find that counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2002). "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). Direct appeal is usually an inadequate vehicle to raise this claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Trial counsel should ordinarily have an opportunity to explain her actions before an appellate court denounces her actions as ineffective. *Id.*

The record does not reflect why counsel chose not to request additional peremptory strikes. Appellants did not file a motion for new trial, and trial counsel thus has not had an opportunity to explain or defend her trial strategy. Moreover, trial counsel has not had an opportunity to explain the effect, if any, of her alleged deficient conduct with regards to the exercise of peremptory strikes. Conducting voir dire and exercising peremptory strikes are inherently matters of trial strategy. *See State v. Morales*, 253 S.W.3d 686, 697–98 (Tex. Crim. App. 2008) (en banc). As the Court of Criminal Appeals noted in *Morales*, trial counsel could have a tactical reason for keeping a juror who appears to be unfavorable. *Id.* at 698. Trial counsel may, for example, have chosen to

24

use her peremptory strikes on venire members she found were less favorable to her client. Here, nothing in the record indicates trial counsel's reasons for how she exercised her peremptory strikes. In the absence of such information, we cannot say that trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See, e.g., Delrio v. State*, 840 S.W.2d 443, 446 (Tex. Crim. App. 1992) (per curiam) (en banc) ("Although we would certainly expect the occasion to be rare, we cannot say . . . that under no circumstances could defense counsel justifiably fail to exercise a challenge for cause or peremptory strike against a venireman who deemed himself incapable of serving on the jury in a fair and impartial manner.").

Appellants have not established that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. Having determined that Appellants failed to establish the first prong of the *Strickland* test, we need not consider whether they were prejudiced by the allegedly deficient performance. We overrule Appellants' eleventh issue.

## CONCLUSION

Having overruled each of Appellants' issues on appeal, we affirm the judgments of the trial court.

Judy C. Parker
Justice

Do not publish.

25